**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

OCT 2 1 2010

U. S. DISTRICT COURT
E. DISTRICT OF MO.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| MOHAMUD ABDI YUSUF,, | ) | **4:10CR   00547HEA** |
|    a/k/a "Sheikh Hassan," | ) | |
|       "Hassan Dhunkaal," | ) | |
|       "Mohamoud Yusuf Dhunkaal" | ) | |
| DUANE MOHAMED DIRIYE, | ) | |
|    a/k/a "Duwane Maxamed Diriiye," | ) | |
|       "Duane Dirie," | ) | |
|       "Duane Mohamed Diriye," | ) | |
| ABDI MAHDI HUSSEIN, | ) | |
|    a/k/a "Abdi Hussein," | ) | |
|       "Khaliif" | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury Charges:

At all times relevant and material to this Indictment:

### Introduction

1.      Defendant Mohamud Abdi Yusuf, also known as "Sheikh Hassan," and "Hassan

Dhunkaal," and "Mohamoud Yusuf Dhunkaal" (hereinafter "Yusuf") was a Somali national who

immigrated to the United States as a refugee and resided in St. Louis, Missouri, in the Eastern

District of Missouri where he worked as a taxi cab driver with Express Airport Cab.

2.      Defendant Duane Mohamed Diriye, also known as "Duwane Maxamed Diriiye,"

"Duane Dirie," "Duane Mohamed Diriye" (hereinafter "Diriye") was in Kenya or Somalia.

1

3.     Abdi Mahdi Hussein, also known as "Abdi Hussein" and "Khaliif", (hereinafter "Hussein") was a Somali national who immigrated to the United States from Somalia and lived in Minnesota where he worked for Qaran Financial Express, LLC as a money remitting agent.

4.     Unindicted Co-Conspirator 1 ("UCC#1") was a Somali national who immigrated to the United States and lived in San Diego, California.

5.     F.Y. was a person who lived in Somalia.

6.     Omar Mattaan lived in Somalia and was a member and supporter of al-Shabaab.

7.     W.S.M. had a bank account in his name at a bank in San Diego, California.

8.     I.D. was an employee of Shidaal Express, Inc. who lived in the San Diego, California area.

9.     A.J. was a person from Somalia who lived in North Carolina.

10.    A.D. was a person believed to be living in the United States.

11.    "Sheikh Saaid" was person in Somalia who supported al-Shabaab.

12.    H.H. was a person from Somalia living in Tennessee.

13.    M.A. was a person from Somalia who lived in the San Diego, California area.

14.    M.K. was a person from Somalia who lived in the San Diego, California area.

15.    Mahad was an individual whose nationality and whereabouts are unknown.

16.    Kay was an individual whose nationality and whereabouts are unknown.

17.    North American Money Transfer Inc., which did business as Mustaqbal (hereinafter "NAMT Mustaqbal"), was a licensed money remitting business incorporated in Georgia with branches in the Eastern District of Missouri and elsewhere that provided international money transfer services in the United States and elsewhere, including but not

2

limited to Somalia and Kenya.

18. Qaran Financial Express, LLC (hereinafter "QFE"), also referred to as "Global,"
was a licensed money service business incorporated in Virginia with branches in Ohio,
Minnesota, and elsewhere that provided international money transfer services to individuals in
the United States and elsewhere, including but not limited to Somalia and Kenya.

19. Amal Money Transfer, doing business as Shidaal Express, Inc. (hereinafter
"Shidaal") was a licensed money remitting business located in San Diego, California.

20. For at least the past fifteen years, Somalia has lacked a stable government and has
been vulnerable to intense civil and sectarian violence. In 2004, the Transitional Federal
Government (hereinafter "TFG") was established under international auspices, and enjoyed the
support of the United States and the United Nations. A loose coalition of Islamic insurgents
known as the Islamic Courts Union (or Council of Islamic Courts, hereinafter "ICU") fought
against the TFG and took control over much of Somalia. In or about June 2006, the ICU
captured Somalia's capital city, Mogadishu, and the TFG retreated. The ICU, together with an
extremist, insurgent, and violent faction known as al-Shabaab, continued to fight the TFG.

21. Al-Shabaab operated as a terrorist organization based in Somalia, whose objective
was the violent overthrow of the TFG and ousting African Union support, and the imposition of
Shari'a law in Somalia.

22. In late 2006, Ethiopian and African Union forces intervened on behalf of the
TFG and recaptured Mogadishu, and al-Shabaab began targeting all aspects of the TFG, as well
as Ethiopian and African Union support.

3

23.    In or about late 2008 and early 2009, Ethiopia began to withdraw its troops from Somalia, and al-Shabaab advanced against the TFG. By February 2009 al-Shabaab controlled a large part of Somalia.

24.    Al-Shabaab used violence, insurgent-style attacks, and propaganda to target the TFG and its Ethiopian and African Union supporters, including: violent insurgent operations; improvised explosive devices; rockets; mortars; automatic weapons; physical violence; intimidation; and regularly recorded, filmed and disseminated photos and videos capturing these activities.

25.    On or about February 26, 2008, the U.S. Department of State designated al-Shabaab, also known as: (a/k/a) al-Shabab, Shabaab, Mujahidin al-Shabaab Movement, Mujahidin, MYM, Harakat Shabab al-Mujahidin, Hizbul Shabaab, Hisb'ul Shabaab, al-Shabaab al-Islamiya, al Shabaab al-Islaam, al-Shabaab al-Jihaad, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act, as amended, and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224, as amended, and the designations remain in effect as of the date of this Indictment.

26.    The term "al-Shabaab" is an Arabic word that loosely translates to "the Youth."

27.    Until his death, Aden Hashi Ayrow, (hereinafter "Ayrow") was the principal military leader and commander of al-Shabaab. Ayrow called for foreign fighters to join al-Shabaab in a "holy war" against the Ethiopian and other African Union supporters in Somalia.

28.    On or about May 1, 2008, Ayrow was killed in a missile strike.

4

## COUNT I
## (CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO A DESIGNATED FOREIGN TERRORIST ORGANIZATION)

1. Paragraphs one (1) through twenty-eight (28) of the Introduction to this

Indictment are hereby re-alleged and incorporated by reference, as though fully set forth herein.

### A. The Conspiracy

2. Beginning at least on or about February 26, 2008, and continuing through the date

July 2009, with the exact dates being unknown, in the Eastern District of Missouri and

elsewhere:

**Mohamud Abdi Yusuf,**
**a/k/a "Sheikh Hassan"**
**"Hassan Dhunkaal,"**
**"Mohamoud Yusuf Dhunkaal," and,**

**Duane Mohamed Diriye,**
**a/k/a "Duwane Maxamed Diriiye,"**
**"Duane Dirie,"**
**"Duane Mohamed Diriye,"**

Mohamud Abdi Yusuf, Duane Mohamed Diriye, and UCC#1 (hereinafter in Count I, collectively

"the members of the conspiracy"), did knowingly and willfully combine, conspire, confederate

and agree with each other, and with persons known and unknown to the Grand Jury, to provide

material support and resources to al-Shabaab, a designated foreign terrorist organization, to wit:

currency or monetary instruments or financial securities (collectively "funds"), and equipment, to

al-Shabaab, a foreign terrorist organization, which was designated as a foreign terrorist

organization since on or about February 26, 2008, (as defined in Title 18, United States Code,

Section 2339B(g)(6)), knowing that al-Shabaab had been so designated, and knowing that al-

Shabaab had engaged in terrorist activity as defined in section 212(a)(3)(B) of the Immigration

5

and Nationality Act, and knowing that al-Shabaab engaged in terrorism as defined in 140(d)(2) of the Foreign Relations Authorization Act, all in violation of Title 18, United States Code, Section 2339B(a)(1).

## B. Manner and Means

3. In furtherance of the conspiracy and to effect the illegal objects thereof, Yusuf, Diriye, and UCC#1, their co-conspirators, and other persons known and unknown to the Grand Jury (hereinafter referred to collectively in Count I as "members of the conspiracy"), used the following manner and means among others:

4. Prior to February 26, 2008, members of the conspiracy discussed al-Shabaab in coded language, and planned the means by which they could provide funds to al-Shabaab, which prior to that date, was engaged in acts of violence and intimidation directed against the TFG and Ethiopian and African Union supporters and forces.

5. Defendant Yusuf solicited funds from inside and outside the Eastern District of Missouri, coordinated the transfer and transmission of the funds, and contributed his personal funds to al-Shabaab.

6. Defendant Diriye facilitated and coordinated the receipt of funds and the distribution of funds to al-Shabaab from inside Somalia and Kenya by seeking and identifying al-Shabaab members, supporters and affiliates in Somalia, Kenya, and elsewhere, to receive the funds, and by providing members of the conspiracy who were collecting the funds with information concerning al-Shabaab's operations and activities in Somalia.

7. UCC #1, resided in San Diego, California, where he collected funds from Yusuf and others, and sent the funds, or caused the funds to be sent directly and indirectly to al-Shabaab

6

in Somalia.

8. During the period of the conspiracy, and after al-Shabaab was designated a foreign terrorist organization, members of the conspiracy sent funds overseas, caused funds to be sent overseas to al-Shabaab, and attempted to send funds, directly and indirectly, through money remitting businesses located in the United States, including NAMT Mustaqbal and QFE, to money remitting businesses located in African countries, including Somalia and Kenya, where the funds could be received by al-Shabaab members and supporters.

9. In order to avoid detection and further the goals of the conspiracy, members of the conspiracy used code words and references to al-Shabaab, including but not limited to the youth, Madah Jabshe, the skull-breakers, the young ones, children, orphans, Kuni-Kuni, the runts, students, Gowso-isku-riix, the teeth grinders, the general cause, interest, situation, the common purpose, sling shooters and sling shot throwers, males who wear short pants, and the Arabic word "Shabaab," among other terms.

10. In order to avoid detection and further the goals of the conspiracy, members of the conspiracy used code names when talking about and referring to al-Shabaab leader, Ayrow, including, but not limited to Shiqalow, Sheikhalow, Muja Dhuub, Slim Limbs, the gentleman, and the deceased father.

11. In order to avoid detection and further the goals of the conspiracy, members of the conspiracy sometimes used coded language when referring to persons and places in Somalia, training, fighting, weapons, ammunition, explosives, and violent activities of al-Shabaab, among other topics.

7

12.     In order to avoid detection and further the goals of the conspiracy, members of the conspiracy sometimes used fictitious names, names of third persons, fictitious phone numbers, or phone numbers of third persons when sending funds or causing funds to be sent to al-Shabaab from money remitting businesses in the United States.

13.     In order to avoid detection and further the goals of the conspiracy, members of the conspiracy used coded language to discuss funds and the amounts of funds they sent and caused to be sent.

14.     In order to avoid detection and further the goals of the conspiracy, members of the conspiracy sometimes sent funds or caused funds to be sent to al-Shabaab in structured amounts and otherwise avoided and attempted to avoid record keeping requirements.

15.     In order to further the goals of the conspiracy, members of the conspiracy used telephones in order to communicate with one another and other al-Shabaab facilitators in the United States, Somalia, Kenya, and elsewhere.

16.     Members of the conspiracy raised funds and caused funds to be raised for al-Shabaab by soliciting funds from persons in the United States, and by providing funds to al-Shabaab, and its supporters and members.

17.     In order to avoid detection and further the goals of the conspiracy, members of the conspiracy transported, or caused to be transported, funds to various money remitting businesses in the United States through third parties and couriers.

C.     **Overt Acts**

18.     In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Missouri and elsewhere:

8

General Acts Showing Coded Language and Intent to Support Al-Shabaab

19.     On or about January 1, 2008, Yusuf spoke to UCC#1 about sending funds to the
"Kuni-Kuni children," meaning al-Shabaab.

20.     On or about January 15, 2008, UCC#1 told A.D. that he was responsible for Ohio,
California, and Missouri, and for "all the connections for these areas and [is] the link who does
the job for them."

21.     On or about January 21, 2008, UCC#1 told Yusuf in coded language that he spoke
to the "gentleman," meaning Ayrow, and that the gentleman told him that al-Shabaab planned to
fight and to use funds sent from the United States to purchase ammunition, among other
purposes, and Yusuf warned UCC#1 to "conceal" their support for al-Shabaab "in order to avoid
having the enemy rejoice."

22.     On or about February 3, 2008, Ayrow asked UCC#1 to provide him with funds for
al-Shabaab.

23.     On or about April 8, 2008, Yusuf and UCC#1 discussed establishing and funding
a team of "elites" who could help al-Shabaab and agreed to manage and otherwise provide for the
team.

24.     On or about May 1, 2008, the day Ayrow was killed in a missile strike, Yusuf
informed UCC#1 that planes targeted "Shikhalow, Slim limbs house."

25.     On or about May 1, 2008, UCC#1 informed M.K. that "Muja Dhuub," meaning
Ayrow, was gone and that "Robow," a spokesperson for al-Shabaab, had announced his death.

26.     On or about May 24, 2008, Yusuf and Diriye talked in coded terms about how al-
Shabaab insurgents planned to shoot anyone who "notices mine trigger[s]" to prevent and

discourage anyone from removing mines or improvised explosive devices buried by al-Shabaab insurgents.

27.     On or about May 27, 2008, Diriye told Yusuf that the "Madah Jabshe," a Somali term meaning "skull breakers," a reference to al-Shabaab, developed a new technique for destroying armored vehicles, and Yusuf told Diriye that, if the technique worked, "Madah Jabshe" would finally be taken seriously.

### Acts to Collect Funds to Purchase a Vehicle for al-Shabaab

28.     On or about May 29, 2008, Yusuf and UCC#1 discussed, in coded language, raising funds to be used to purchase a vehicle for al-Shabaab.

29.     On or about May 31, 2008, Yusuf and UCC#1 talked in coded language about finding new methods and new points of contact to receive funds for al-Shabaab, and collecting $5,000.00 for the purchase of a vehicle for al-Shabaab. UCC#1 said that they used "Dhunkaal" as a means to support al-Shabaab.

30.     On or about June 15, 2008, Yusuf and Diriye talked in coded language about sending funds to al-Shabaab for the purchase of a vehicle, and Diriye introduced Yusuf to an individual identified as "Sheikh Saaid," whom Diriye said was a leader in al-Shabaab.

31.     On or about June 17, 2008, Yusuf told UCC#1 that Sheikh Saaid said the vehicle for al-Shabaab would cost $5,000.00, and Yusuf said he already collected $1,700.00 to support the fighters and to help those who could inflict and cause the most pain, meaning al-Shabaab.

32.     On or about June 18, 2008, Yusuf and Diriye talked in coded language about how "Madah Jabshe," meaning al-Shabaab, had been involved in intense fighting against the Ethiopians, and how a vehicle could transport twenty-five fighters, hide equipment and supplies,

10

and be used in tactical operations.

33.    On or about June 21, 2008, Yusuf requested assistance from UCC#1 in raising the funds to purchase a vehicle for al-Shabaab, and Yusuf said that a portion of the funds for the vehicle was ready to be sent.

34.    On or about June 22, 2008, Yusuf sent, or caused to be sent, $1,500.00 from St. Louis, Missouri, to Diriye in Somalia through NAMT Mustaqbal, using the sender name "Hindi Ahmed Yusuf" and the receiver name "Duwane Maxamed Diriye."

35.    On or about June 22, 2008, Yusuf called H.H. and asked her permission to use her name to send $1,400.00 to Diriye in Somalia, and Yusuf told H.H. that, if she was ever asked, she should say that Diriye was her son.

36.    On or about June 24, 2008, Yusuf called Diriye and told him that he sent $1,500.00 under the name "Hindiya Yusuf" through "Mustaqbal" and that he would send an additional $1,500.00.

37.    On or about June 28, 2008, Yusuf sent or caused to be sent $1,000.00 from St. Louis, Missouri, to Diriye in Somalia through NAMT Mustaqbal, using the sender name "Nasro Abdullahi" and the receiver name "Maxamuud Maxamed."

38.    On or about June 30, 2008, Diriye and Yusuf talked in coded terms about funds to be sent for a vehicle for al-Shabaab through NAMT Mustaqbal, using the name "Mohamud Mohamed" and Yusuf said $1,000.00 was sent to Diriye using the sender's name "Nasra Abdullahi" and Diriye said that al-Shabaab was pleased with Yusuf and would congratulate him.

39.    On or about July 3, 2008, Yusuf sent, or caused to be sent, $500.00 from St. Louis, Missouri, to Diriye in Somalia through NAMT Mustaqbal, using the sender name

11

"Mohamoud Yusuf Dhuunkaal" and the receiver name "Cismaan Maxud Dhuxul."

40. On or about July 7, 2008, Yusuf spoke to Sheikh Saaid in coded terms about raising funds for al-Shabaab to continue to fight. Yusuf told Sheikh Saaid to convey Yusuf's regards to his men and tell them that his fund-raising efforts would continue so that al-Shabaab fighters could continue their work.

41. On or about August 4, 2008, Sheikh Saaid told Yusuf that he had received all of the funds, except $400, for the purchase of the "book," a coded term for vehicle.

### Acts to Send Funds Through UCC#1 to Omar Mattaan for al-Shabaab

42. On or about July 4, 2008, UCC#1 spoke in coded terms with F.Y. and stated that he was "in contact in another city called Saint Louis, Missouri," and that they would use "Dhunkaal" to send funds, and would send funds in small amounts.

43. On or about July 8, 2008, Yusuf and UCC#1 talked in coded terms about sending $2,000.00 to al-Shabaab, and Yusuf said that he "put aside 20 papers" and that he wanted a "VIN number," meaning a bank account or routing number, so he could deposit funds into an account so UCC#1 could get access to the funds.

44. On or about July 9, 2008, Yusuf spoke to A.J. in North Carolina and told A.J. that he "sent twenty papers towards the California group," meaning that he sent $2,000.00 to UCC#1 in California with the intent that the funds be sent to al-Shabaab.

45. On or about July 11, 2008, UCC#1 and individuals identified as "Mahad" and "Kay" discussed how members of the conspiracy used "Dhunkaal" to send funds to support Ayrow and al-Shabaab. UCC#1 said that he and others were "ready to support the men who are fighting and hurting." Mahad said that they should send funds for al-Shabaab to "Omar

12

Mattaan."

46.     On or about July 12, 2008, Yusuf asked UCC#1 for the "pin number of the car" and UCC#1 told Yusuf it was account number XXXX-3003, held in the name W.S.M.

47.     On or about July 15, 2008, Yusuf deposited, or caused to be deposited, $2,000.00 into account number XXXX-3003, held in the name of W.S.M., at Bank of America branch in Missouri.

48.     On or about July 16, 2008, $2,000.00 was posted to account number XXX-3003, held in the name of W.S.M., and on or about July 17, 2008, was withdrawn from the same account XXXX-3003 at a Bank of America branch in San Diego, California.

49.     On or about July 18, 2008, UCC#1 spoke with two individuals, one of whom was M.A ,and UCC#1 said that Omar Maatan was a member of al-Shabaab, and that $2,000.00 had been sent to through the "Dhunkaal" name.

50.     On or about July 23, 2008, UCC#1 transferred or caused to be transferred $1,650.00 from Shidaal Express in San Diego, California, using the sender name "Kulan Muhumed," and the receiver name "Omer Mataan,"

51.     On or about July 24, 2008, UCC#1 spoke with Omar Mattaan to confirm that the total $2,000.00 had been sent to, and received by, Omar Mataan.

52.     On or about August 5, 2008, UCC#1 transferred or caused to be transferred $350.00 from Shidaal Express in San Diego, using the sender name "Hashi Mohamed" and the receiver name "Omer Mataan.

## D. Statutory Allegations

From on or about February 26, 2008, up to and including at least in or about July 2009, in an offense in and affecting interstate and foreign commerce, in the United States and elsewhere, and as set forth in paragraphs 1 through 28 of the Introduction and paragraphs 1 through 52 of the Overt Acts, which are fully incorporated by reference, begun and committed outside the jurisdiction of any particular state or District of the United States, by Duane Mohamed Diriye, a/k/a Duwane Maxamed Diriiye, a/k/a Duane Dirie, a/k/a Duane Mohamed Diriye, a defendant herein, who will be brought to and arrested in the Eastern District of Missouri, and Mohamud Abdi Yusuf, UCC#1, and others known and unknown, did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to provide "material support and resources," as that term is defined in Title 18, United States Code, Section 2339A(b), to a foreign terrorist organization, to wit, al-Shabaab, which was designated as a foreign terrorist organization on or about February 26, 2008, pursuant to 219 of the Immigration and Nationality Act, which has remained on the list of designees since that time, and which is currently designated as of the date of the filing of this Indictment.

All in violation of and punishable under, Title 18, United States Code, Section 2339B. The Grand Jury further charges that:

## COUNT II
### (Providing Material Support to a Designated Foreign Terrorist Organization)

1.      Paragraphs one (1) through twenty-eight (28) of the Introduction to this Indictment, and Count I, are hereby re-alleged and incorporated by reference as though fully set forth herein.

14

2. Or about June 22, 2008, in the Eastern District of Missouri and elsewhere:

**Mohamud Abdi Yusuf,,
a/k/a "Sheikh Hassan"
"Hassan Dhunkaal,"
"Mohamoud Yusuf Dhunkaal," and**

**Duane Mohamed Diriye,
a/k/a "Duwane Maxamed Diriiye,"
"Duane Dirie,"
"Duane Mohamed Diriye,"**

defendants herein, did knowingly provide, and attempt to provide, material support and

resources, to wit: $1,500.00 in United States currency and funds, to al-Shabaab, a foreign

terrorist organization, which was designated as a foreign terrorist organization since on or about

February 26, 2008, knowing that the organization was designated as a terrorist organization (as

defined in Title 18, United States Code, Section 2339B(g)(6)), and that the organization had

engaged and was engaging in terrorism; in violation of Title 18, United States Code, Section

2339B(a)(1).

In violation of Title 18, United States Code, Section 2339(B)(a).

The Grand Jury further charges that:

## COUNT III
### (Providing Material Support to a Designated Foreign Terrorist Organization)

1. Paragraphs one (1) through twenty-eight (28) of the Introduction to this

Indictment, and Count I, are hereby re-alleged and incorporated by reference as though fully set

forth herein.

2.    Or about June 28, 2008, in the Eastern District of Missouri and elsewhere:

**Mohamud Abdi Yusuf,,**
**a/k/a "Sheikh Hassan"**
**"Hassan Dhunkaal,"**
**"Mohamoud Yusuf Dhunkaal," and**

**Duane Mohamed Diriye,**
**a/k/a "Duwane Maxamed Diriiye,"**
**"Duane Dirie,"**
**"Duane Mohamed Diriye,"**

defendants herein, did knowingly provide, and attempt to provide, material support and

resources, to wit:  $1,000.00 in United States currency and funds, to al-Shabaab, a foreign

terrorist organization, which was designated as a foreign terrorist organization since on or about

February 26, 2008, knowing that the organization was designated as a terrorist organization (as

defined in Title 18, United States Code, Section 2339B(g)(6)), and that the organization had

engaged and was engaging in terrorism; in violation of Title 18, United States Code, Section

2339B(a)(1).

In violation of and punishable under, Title 18, United States Code, Section 2339(B)(a).


The Grand Jury further charges that:

## COUNT IV
## (Providing Material Support to a Designated Foreign Terrorist Organization)

1.    Paragraphs one (1) through twenty-eight (28) of the Introduction to this

Indictment and Count I are hereby re-alleged and incorporated by reference as though fully set

forth herein.

2.       From on or about July 15, 2008, through on or about August 5, 2008, in the

Eastern District of Missouri and elsewhere:

**Mohamud Abdi Yusuf,,
a/k/a "Sheikh Hassan"
"Hassan Dhunkaal,"
"Mohamoud Yusuf Dhunkaal"**

the defendant herein, did knowingly provide, and attempt to provide, material support and

resources, to wit: $2,000.00 in United States currency and funds, to al-Shabaab, a foreign

terrorist organization, which was designated as a foreign terrorist organization since on or about

February 26, 2008, knowing that the organization was designated as a terrorist organization (as

defined in Title 18, United States Code, Section 2339B(g)(6)), and that the organization had

engaged and was engaging in terrorism; in violation of Title 18, United States Code, Section

2339B(a)(1).

       In violation of and punishable under, Title 18, United States Code, Section 2339(B)(a).

The Grand Jury further charges that:

## COUNT V
## (CONSPIRACY TO STRUCTURE MONETARY TRANSACTIONS)

1.       Paragraphs one (l) through twenty-eight (28) of the Introduction to this Indictment

are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.       From in or about April 2008, to in March 2009, in the Eastern District of

Missouri and elsewhere:

17

**Mohamud Abdi Yusuf,,**
**a/k/a "Sheikh Hassan"**
**"Hassan Dhunkaal"**
**"Mohamoud Yusuf Dhunkaal;" and,**

**Hussein Mahdi Hussein,**
**a/k/a "Abdi Hussein,"**
**"Khaliif"**

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with

each other, and with persons known and unknown to the Grand Jury, to commit the following

offenses against the United States, to wit:

a.      for the purposes of evading the reporting requirements, and maintaining record

keeping requirements pursuant to any regulation prescribed under section 123 of Public Law 91-

508, caused or attempted to cause a domestic financial institution to fail to file a report, and

maintain records as required in Title 31, United States Code, Section 5324(a)(1);

b.      for the purposes of evading the reporting requirements, and maintaining record

keeping requirements pursuant to any regulation prescribed under section 123 of Public Law 91-

508, caused or attempted to cause a domestic financial institution to file a report and maintain

records that contain material omissions or mis-statements of fact as proscribed in Title 31, United

States Code, Section 5324(a)(2); and,

c.      structured, assisted in structuring, or attempted to structure transactions with one

or more domestic financial institution as proscribed in Title 31, United States Code, Section

5324(a)(3).

18

## A. Manner and Means

3. In furtherance of the conspiracy and to effect the illegal objectives thereof, the defendants accomplished, and attempted to accomplish, the objects of the conspiracy in the following manner and through the following means:

4. In order to avoid detection and further the goals of the conspiracy Yusuf, Hussein, and other conspirators known and unknown to the Grand Jury structured the receipt, transfer and transmission of currency from the United States to locations in Kenya and Somalia to avoid reporting and record keeping obligations required by federal law and regulation.

5. In order to avoid detection and further the goals of the conspiracy, in conducting currency transfers through QFE, Yusuf, Hussein, and other conspirators known and unknown to the Grand Jury, divided large currency transfers, in excess of $3,000.00, into several smaller, independent transactions to avoid reporting and record keeping obligations required by federal law and regulation so the senders could avoid presenting identification and other documentation.

6. In order to avoid detection and further the goals of the conspiracy, in conducting currency transfers through QFE, Yusuf, Hussein, and other conspirators known and unknown to the Grand Jury used false and fictitious names, identities, and telephone numbers on currency transfers from the United States to location in Kenya and Somalia.

7. In order to avoid detection and further the goals of the conspiracy, Yusuf, Hussein and other conspirators known and unknown to the Grand Jury often spoke to one another using coded language when arranging and facilitating currency transfers.

**B.   Additional Background**

8.   M.O. was a person from Somalia who lived in Minnesota.

9.   M.H. was a person from Somalia who lived in Minnesota.

**C.   Overt acts**

In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Eastern District of Missouri and elsewhere:

10.   On or about May 12, 2008, Yusuf spoke to M.H. and M.O., concerning his need to send $5,000.00 overseas without providing reports, identification documents and requirements, or being identified as the sender of the $5,000.

11.   On or about May 14, 2008, Yusuf and Hussein used coded language to discuss structuring the transfer of currency and transferring the currency to an individual he identified as "Abdullahi Sheikh Ahmed" and "Sheikh Ahmed Sheikh Nur-Yare" in a "discrete" manner and "fixing" the transaction.

12.   On or about May 21, 2008, Hussein used coded language and told Yusuf the confirmation numbers for three structured currency transfers were: 2030799 "for 25 shillings," 2036347 "for 17 sweaters," and 2040841 "for 8 shirts," totaling $5,000.00, and said "add the sum of the numbers and let the work begin."

13.   From on or about May 18, 2008, through May 21, 2008, Yusuf and Hussein structured and transferred, or caused to be transferred through QFE in the United States to locations in Kenya and Somalia the following amounts of currency:

| Date | Amount | Sender Name | Receiver Name |
|------|--------|-------------|---------------|
| 5/18/2008 | $2,500 | Yusuf Mumin Bahdon | Mohamed Nur Ahmed |
| 5/20/2008 | $1,700 | Yusuf Bahdon Dhuule | Mohamed Nur Ahmed |
| 5/21/2008 | $800 | Barisse Hasan Iyow | Mohamed Nur Ahmed |

14.    On or about May 22, 2008, Yusuf traveled to the Karmel Mall located in Minneapolis, Minnesota, to meet M.O. and Hussein, and deliver currency for purposes of arranging the transfer of the currency overseas at a later date.

15.    From on or about May 25, 2008, through on or about May 29, 2008, Yusuf and Hussein structured and transferred, or caused to be transferred, through QFE the following amounts of currency, sent from the United States to locations in Somalia and Kenya:

| Date | Amount | Sender name | Receiver name |
|------|--------|-------------|---------------|
| 5/25/2008 | $1,800 | Isse Mohamed Yonis | Mohamed Nur Ahmed |
| 5/26/2008 | $1,700 | Mummin Abdulle Yusuf | Mohamed Nur Ahmed |
| 5/29/2008 | $1,500 | Yusuf Gurey Maxamed | Mohamed Nur Ahmed |

16.    On or about May 27, 2008, Yusuf spoke with H.H. and discussed using H.H.'s name "and Huusho's" to send approximately $1,500.00 overseas because Yusuf's "prior connection [had] been cut off."

17.    On or about May 27, 2008 Yusuf spoke with Hussein and arranged to send $1,450.00 through QFE in the United States using the sender "Hindi Ahmed Yusuf" with $1,450.00 being sent to and received by "Maryan Yusuf Dhunkal" in Mogadishu, Somalia, $1,450.00 being transferred and intended to be used for the "common purpose."

21

18.     On or about May 29, 2008, Yusuf and Hussein transferred, or cause to be transferred, through QFE in the United States to Somalia $1,450.00 using the sender name as "Hindi Ahmed Hasan" and the receiver name as "Maryan Yusuf Dhunkaal."

19.     On or about July 5, 2008, and again on July 17, 2008, Yusuf spoke with an individual know to the Grand Jury and told him that he was sending $5,000.00 to him.

20.     On or about July 17, 2008 Yusuf and Hussein discussed the status of the structured transfer of $5,000.00 that Yusuf sent overseas.

21.     From on or about July 8, 2008, through on or about July 20, 2008, Yusuf and Hussein structured and transferred, or caused to be transferred through QFE in the United States to locations in Kenya and Somalia the following amounts of currency:

| Date | Amount | Sender Name | Receiver Name |
|------|--------|-------------|---------------|
| 7/8/2008 | $1,800 | Yusuf Ganey Muse | Mohamed Nur Ahmed |
| 7/8/2008 | $1,500 | Ahmed Osman Salad | Mohamed Nur Ahmed |
| 7/20/2008 | $1,700 | Hasan Mohamed Hersi | Mohamed Nur Ahmed |

22.     On or about October 28, 2008, Yusuf advised Hussein that someone will come to Hussein with "two for the general purpose" and that Hussein should be in the state of the highest alert.

23.     On or about November 24, 2008, Yusuf spoke in coded language to Hussein about sending $5,000.00 overseas in five separate transfers for an individual identified as "Feereweyne," and that if anyone discovered their transactions, they could deny having "seen" or worked with one another.

22

24.     On or about January 3, 2009, Hussein told Yusuf that he transferred $1,500.00 overseas on two different occasions, for a total of $3,000.00, and Hussein also told Yusuf that he planned to transfer an additional $1,000.00 that day and would provide Yusuf with the confirmation numbers for the transfers.

25.     On or about January 4, 2009, Hussein gave Yusuf confirmation numbers for the structured monetary transfers: $1,500.00, confirmation number 3315612; $1,000.00, confirmation number 3315808; and, $1,500.00 confirmation number 3315716; for a total of $4,000.00, and Yusuf said that Hussein had another week for the remaining $2,000.00, and that after the transactions Hussein would not see him again and that he and Hussein would deny knowing one another.

26.     From in or about November 2008, through March 2009, Yusuf and Hussein structured and transferred, or caused to be transferred, through QFE in the United States to locations in Kenya and Somalia the following amounts of currency:

| Date | Amount | Sender Name | Receiver Name |
| --- | --- | --- | --- |
| 11/11/2008 | $1,000 | Hasan Mohamed Hersi | Mohamed Nur Ahmed |
| 1/4/2009 | $1,500 | Hasan Mohamed Hersi | Mohamed Nur Ahmed |
| 1/4/2009 | $1,500 | Yusuf Yonis Mohamed | Mohamed Nur Ahmed |
| 1/4/2009 | $1,000 | Muuse Ahmed Dhubow | Mohamed Ahmed |
| 3/9/2009 | $1,000 | Hasan Hersi | Mohamed Ahmed Nur |

In violation of and punishable under, Title 18, United States Code, Section 371 and 2.

23

The Grand Jury further charges that:

## COUNT VII
## (IMMIGRATION FRAUD)

On or about November 10, 2008, in the Eastern District of Missouri,

**Mohamud Abdi Yusuf,
a/k/a "Sheikh Hassan,"
"Hassan Dhunkaal,"
"Mohamoud Yusuf Dhunkaal"**

the defendant herein, did knowingly make a false statement under oath in a United States

immigration proceeding related to naturalization, to wit: the defendant did not use any names

other than "Mohamud Abdi Yusuf," which the defendant knew was a false statement at the time

he made it.

In violation of Title 18, United States Code, Section 1015(a) and Title 18, United States

Code, Section 1015.

A TRUE BILL

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____

MATTHEW T. DRAKE, #115986
Assistant United States Attorney

24